## ESTELLE K. NOCERINO v. ANTHONY NOCERINO

SUPERIOR COURT    NEW LONDON COUNTY    FILE No. 16369

Memorandum filed April 23, 1946.

*Griswold Morgan,* of New London, for the Plaintiff.

*Morris Lubchansky,* of New London, for the Defendant.

INGLIS, J.   The plaintiff and defendant were married January 21, 1929. They have one child, a daughter, born May 29, 1929. All of the credible testimony in the case is to the effect that over a long period of years the defendant has on many occasions inflicted physical violence on the plaintiff in addition to injuring her in many other ways. He is a man of violent temper, vituperative and domineering. His principal defense in this action is that his violent treatment of his wife was provoked by her claimed misconduct with another man. The only evidence of this misconduct is in the testimony of the defendant himself, and he is not worthy of credence. Moreover, his brutality toward his wife commenced many years before the improper

conduct of which he claims she has been guilty. It is found that the defendant has been guilty of intolerable cruelty toward the plaintiff and that she is in court with clean hands.

There are only two possible questions in the case. The first is whether the plaintiff has resided continuously in this state for at least three years before the institution of the action. The second is whether she has condoned the defendant's intolerable cruelty. Both of these questions arise out of a three-week stay of the plaintiff in Bayonne, N. J., in September or October, 1943.

For all of their married life prior to the summer of 1940 the parties had lived together in Bayonne. It had been the custom of the plaintiff each summer to spend a two- or three-week vacation with her sisters in New London, generally bringing her daughter with her. In June, 1940, she came to New London, ostensibly for her usual vacation, but in reality with the intention of not returning to Bayonne. She obtained employment here, living for a time with her sisters and then renting an apartment of her own on Belden Street. In September, 1943, she was out of employment and was finding it difficult to obtain a job because she did not have a birth certificate. Her husband, becoming aware of the situation, urged her to return to Bayonne. He had her birth certificate and offered to use it to help her get a job in Bayonne. His first request was that she resume marital relations with him, but when she told him that that was out of the question, he promised to let her alone except that he wanted to "court" her all over again. Partly as a result of his urging, she went to Bayonne, planning to stay with an aunt while she looked for employment and, if she found employment, to rent an apartment there. She did not give up her apartment in New London but left most of her possessions there, taking with her only two suitcases and some of her clothing.

At Bayonne she stayed only one night with her aunt, because she found the aunt's apartment was overcrowded. The next day, upon her husband's suggestion, she moved her baggage into the apartment which was then occupied by him, their daughter and his brother. The arrangement was that the defendant and his brother were to sleep in one room and the plaintiff and her daughter in another. After she had been there about a week, one evening when the brother and daughter were both out the

defendant, after very considerable resistance by the plaintiff, forced her to have sexual intercourse with him. At the end of the second week of her stay, the defendant's brother having moved out of the apartment, the defendant ordered the daughter to move her things upstairs to the bedroom formerly occupied by the two men, and, by threats, intimidated the plaintiff into consenting that he should sleep with her. This arrangement continued for about a week. By the end of that time the plaintiff, having been unable to get either a job or a separate apartment in Bayonne, and also having become thoroughly frightened by intimations that the defendant would take her life, left Bayonne and returned to New London and to her apartment on Belden Street.

This three-week trip did not constitute a break in the plaintiff's residence in New London because she retained her residence here during all the time she was away. It was no more than a trip made to investigate the possibility of her making a change of residence.

Nor did the occurrence constitute condonation of the defendant's intolerable cruelty. One essential of condonation is the intention to forgive. *Dion* v. *Dion,* 128 Conn. 416. Clearly in this case the plaintiff had no such intention.

No claim for alimony is pressed. So far as the custody of the child is concerned the situation is that at the present time she is residing with the defendant in Bayonne, N. J. The only court which has jurisdiction to award custody of a child is the court of the state in which the child is domiciled. In states where parents have joint guardianship of their children, the domicile of a child follows that of the parent who has the actual custody. Restatement, Conflict of Laws, §§ 32, 54. Accordingly, this court has no jurisdiction to award custody.

Judgment may enter decreeing a divorce to the plaintiff on the ground of intolerable cruelty.